IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**RONDALE L. ELLIS, No. R-59443,**

    **Plaintiff,**

vs.                                                  **CIVIL NO. 15-cv-1155-JPG**

**TYSON P. SHURTZ,**
**SERGEANT PELKER,**
**STEVEN P. RICHARD,**
**LIEUTENANT CARTWRIGHT,**
**MAJOR ZEIGLER,**
**MAJOR HASEMEYER, and**
**UNKNOWN PARTY,**

    **Defendants.**

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Rondale Ellis is currently incarcerated at Hill Correctional Center. (Doc. 1.) Proceeding *pro se*, he has filed a complaint pursuant to 42 U.S.C. § 1983 against several correctional officers employed by Menard Correctional Center ("Menard"), where he was previously incarcerated. Ellis claims the Defendants violated his rights under the Eighth and Fourteenth Amendments. (*See* Doc. 1 at 11.) He seeks monetary relief. (*Id.*)

This matter is now before the Court for a preliminary review of Ellis's complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." *Id.* § 1915A(a). During this preliminary review under § 1915A, the Court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or

if it "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b)(1)-(2).

## Background

Ellis's complaint alleges several instances of constitutional deprivations by Menard correctional officers, beginning with, and indeed stemming from, an altercation between himself and Defendants Shurtz and Sergeant Pelker. According to the complaint, on October 29, 2013, at approximately 9:30 a.m., an argument broke out between Ellis and Shurtz. (Doc. 1 at 7-8.) For some time, Ellis had complained to various prison personnel that the cable outlet in his prison cell had been "cemented up," thus preventing him from watching television for the past two weeks. (*Id.* at 8.) Ellis raised this issue with Defendant Shurtz, a correctional officer at Menard, when the latter was passing out lunch trays in the gallery where Ellis's housing unit was located. (*Id.* at 7.) When he approached Ellis's cell and opened the chuckhole, Ellis stuck one of his arms through the chuckhole and proceeded to request an audience with the warden. (*Id.*)

Ellis explained to Shurtz that he had spoken with many prison employees about his television problem and that all of them had assured him they would resolve the problem, but none of them ever did. (*Id.* at 8.) While Ellis and the correctional officer were conversing, Ellis's arm remained sticking out of the chuckhole. Shurtz asked Ellis to remove his arm from the chuckhole, promising he would move him to a new cell where the television worked if he complied with his request. (*Id.*) When Ellis refused, Shurtz became angry, saying, according to Ellis, "Fuck it. I don't give a fuck that your arm is out dumb ass [*sic*]." (*Id.*) Shurtz then continued to pass out lunch trays. (*Id.*)

The complaint states that Shurtz reappeared seconds later in a fit of rage upon finding Ellis's arm was still sticking out of the chuckhole. (*Id.*) The complaint then states Shurtz

slammed the door of the chuckhole on Ellis's arm, an act that resulted in swelling and multiple lacerations. (*Id.*) Ellis, however, continued to leave his arm sticking out of the chuckhole, requesting to speak with the warden. (*Id.*) Shurtz called Ellis a "dumb fucker" and retreated from the scene. (*Id.*)

Sometime later, at an unspecified time, Shurtz returned to Ellis's cell, this time with Defendant Pelker. (*Id.*) Pelker ordered Ellis to remove his arm from the chuckhole. (*Id.*) When Ellis refused, Pelker slammed the chuckhole door on Ellis's arm with even more force than did Shurtz. (*Id.* at 8-9.) Ellis, in pain, removed his arm from the chuckhole. (*Id.* at 9.) Ellis and Pelker exchanged words, and Pelker told Ellis he was going to return and take his television. (*Id.*)

Sometime after Pelker and Shurz left, Ellis noticed that the water in his cell had been shut off. (*Id.*) Apparently distraught, he covered the cell door and window with a sheet. (*Id.*) The complaint then alleges that several correctional officers began banging on Ellis's cell window and door, informing him that they were going to break his television. (*Id.*) After two hours had passed, Defendant Lieutenant Cartwright approached the door and asked Ellis to remove the sheet from the door and window. (*Id.*) Ellis refused, again requesting to speak with the warden. (*Id.*) This angered Cartwright, who then told Ellis they were going to take his television and alluded to the fact that the prison tactical team (referred to by Ellis as "Orange Crush," an appellation this Court will adopt herein), would be coming soon. (*Id.*) About one hour after his conversation with Cartwright, Ellis alleges an unknown officer, who referred to himself as "the Major,"[1] ordered Ellis and his cellmate to remove the sheet from the door and window. (*Id.*) Ellis again refused. (*Id.*) Approximately thirty minutes later, Orange Crush arrived. (*Id.*)

---

[1] It is unclear from the complaint whether this individual is Defendant Major Ziegler, Defendant Major Hasmeyer, or some other correctional officer who holds the rank of major.

The complaint alleges Defendant Sergeant Steven Richard of Orange Crush ordered Ellis and his cellmate to approach the door "and coff [*sic*] up." (*Id.*) When both prisoners refused, the complaint alleges the tactical team sprayed "O.C. spray"[2] into Ellis's cell through the chuckhole. (*Id.*) Ellis alleges the spray caused him and his cellmate to choke and gag. (*Id.*) Only seconds later, Ellis asserts Defendant Unknown Party (an unspecified number of Orange Crush officers) rushed into the cell and "punched, choked, struck, and kicked" Ellis and his cellmate "one or more times" each, even though both prisoner's wrists had been secured by restraints. (*Id.*) Ellis alleges he briefly lost consciousness during the beatings. (*Id.*) The complaint goes on to state that members of Orange Crush placed restraints on the prisoners' ankles that were so tight they left abrasions. (*Id.*) Ellis pleaded with members of the tactical team to loosen the restrains, but they refused to do so. (*Id.* at 9-10.) Ellis states that all the while he was being assaulted, Major Zeigler, Major Hasemeyer, Lieutenant Cartwright, Sergeant Pelker, and Sergeant Richard, all officers holding authority over the members of the tactical team and present for and aware of the situation, failed to come to the aid of Ellis and his cellmate. (*Id.* at 10.)

Upon being restrained, Ellis and his cellmate were escorted by members of Orange Crush to a different section of the same housing unit to await the arrival of the prison nurse to treat their injuries. (*Id.*) Each prisoner was flanked on either side by an officer. (*Id.*) There was also an officer recording the scene with a video camera. (*Id.*)[3] The two prisoners were ordered to face the wall with their heads down. Ellis alleges that, without warning, Defendant Unknown Party (the officer standing on his right side) placed his hand on the back of Ellis's head and rammed his knee into Ellis's face, breaking his nose. (*Id.*) The nurse eventually arrived, and Ellis and his cellmate were taken to the Health Care Unit ("HCU"). (*Id.*) While being escorted to the HCU

---

[2] "O.C. spray" presumably stands for "oleoresin capsicum spray," a type of pepper spray.
[3] The complaint states that the officer had been recording "the entire incident," and "had been [recording] the whole entire time." (*Id.*)

and back again to his cell, Ellis alleges Unknown Party (the officer on his right side) threatened him several times, including saying that he would "drop [him] on [his] face" if he did not walk faster. (*Id.*)

Upon returning to their unit, the two prisoners were strip searched and placed back into the cell. (*Id.*) Ellis alleges that he and his roommate were denied access to their items of personal property and were without running water for a week. (*Id.*) A prisoner housed in an adjacent cell told Ellis he witnessed one of the Orange Crush officers break his television. (*Id.*) The day after the incident, someone was sent to remove the cement covering the cable outlet. (*Id.*)

### Discussion

To facilitate the management of future proceedings, and in accordance with the objectives of Federal Rules of Civil Procedure 8 and 10, the Court finds it appropriate to break the claims in Ellis's *pro se* complaint into numbered counts, as shown below. The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court. The designation of these counts does not constitute an opinion as to their merit. Some of Ellis's claims survive preliminary review.

> **COUNT 1:** Defendants Shurtz and Pelker physically assaulted Plaintiff in violation of his Eighth Amendment rights.
>
> **COUNT 2:** Unknown Party pepper sprayed and physically assaulted Plaintiff in violation of his Eighth Amendment rights.
>
> **COUNT 3:** Defendants Zeigler, Hasemeyer, Cartwright, Pelker, and Richard failed to intervene while Unknown Party pepper sprayed and physically assaulted Plaintiff in violation of his Eighth Amendment rights.
>
> **COUNT 4:** Unknown Party slammed his knee into Plaintiff's nose in violation of his Eighth Amendment rights.
>
> **COUNT 5:** Unknown Party verbally threatened Plaintiff in violation of his Eighth Amendment rights.

**COUNT 6:** Plaintiff was without water in his cell for a week in violation of his Eighth Amendment Rights.

**COUNT 7:** Plaintiff was deprived of his personal property in violation of his Fourteenth Amendment rights.

**COUNT 8:** Defendant Unknown Party destroyed Plaintiff's television in violation of his Fourteenth Amendment rights.

A. **Eighth Amendment Excessive Force Claims**

**Counts 1**, **2**, and **4** survive preliminary review. The intentional use of excessive force by correctional employees against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment, and is therefore actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred and that "it was carried out 'maliciously and sadistically' rather than as a part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 599 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). Several factors are relevant to this determination, including (a) the need for force, (b) the amount of force applied, (c) the threat a guard reasonably perceived, (d) the effort made to temper the severity of the forced used, and (e) the extent of the injury caused to the prisoner. *Hudson*, 503 U.S. at 7; *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004). Plaintiff has adequately pleaded these factors with reference to Defendants Shurtz's and Pelker's slamming of the chuckhole door on Plaintiff's arm (**Count 1**). Plaintiff may also proceed with **Counts 2** and **4** against the unknown members of Orange Crush who pepper sprayed and assaulted him and the unknown member of Orange Crush who slammed Plaintiff's knee into his own face, provided he is able to identify these unknown parties through discovery.

In addition, an officer who witnesses the improper use of force against a prisoner can be found liable under the Eighth Amendment. *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972) ("[O]ne who is given the badge of authority . . . may not ignore the duty imposed by his office

and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge."). For this reason, Plaintiff may also proceed with **Count 3** against Defendants Zeigler, Hasemeyer, Cartwright, Pelker, and Richard for their failure to intervene while members of Orange Crush applied excessive force against Plaintiff.

### B. Eighth Amendment Verbal Threat Claim

Plaintiff may not proceed with **Count 5** at this time. Plaintiff claims that an unknown member of Orange Crush, presumably the one who assaulted Plaintiff while he was waiting for the prison nurse to arrive, verbally threatened him as he was being escorted to the HCU and back to his cell. Most instances of verbal abuse do not rise to the level of cruel and unusual punishment. *Dobbey v. Ill. Dep't of Corrections*, 574 F.3d 443, 446 (7th Cir. 2009); *DeWalt*, 22 F.3d at 612. While verbal abuse that leads to "severe psychological harm" may rise to such a level, *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015), Plaintiff has not alleged he was affected by the officer's threats in any way. Therefore, **Count 5** is dismissed without prejudice.

### C. Eighth Amendment Conditions of Confinement Claim

Cell conditions may violate the Eighth Amendment when they are so dangerous they threaten a prisoner's health. *Townsend v. Fuchs*, 522 F.3d 765, 772 (7th Cir. 2008). Prison officials may be held liable under § 1983 if they are aware of the dangerous nature of the conditions, but refuse to do anything about it. *Id.* at 773. Here, there is no indication that Plaintiff's cell was his only source for drinking or washing, or that he experienced any adverse health effects as a result of the lack of water in his cell for a week. Therefore, **Count 6** is dismissed without prejudice.

### D. Fourteenth Amendment Due Process Claims

Plaintiff may not proceed with **Count 7** (deprivation of personal property for a week) and **Count 8** (destruction of television). The only constitutional right that might be implicated by these claims is Plaintiff's right under the Fourteenth Amendment to be free from deprivations of his property by state actors without due process of law. *See* U.S. CONST. amend. XIV, § 1. To state a claim under the Due Process Clause of the Fourteenth Amendment, a plaintiff must establish a deprivation of liberty or property *without due process of law*; if the state provides an adequate remedy, the plaintiff has no due process claim. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); *see also* 705 ILL. COMP. STAT. 505/8. Accordingly, **Counts 7** and **8** are dismissed without prejudice.

### Discovery of Unknown Party

Plaintiff shall be allowed to proceed with **Counts 2** and **4** against Defendant Unknown Party. However, the parties denoted by the "Unknown Party" label must be identified with particularity before service of the complaint can be made on them. Where a prisoner's complaint states specific allegations describing conduct of prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, the United States Magistrate Judge shall set guidelines for discovery aimed at identifying these parties, so that Ellis can amend the complaint to include all references to the defendants.

**Disposition**

IT IS HEREBY ORDERED that Plaintiff may proceed on **COUNT 1** against Defendants **SHURTZ** and **PELKER**, on **COUNT 2** against Defendant **UNKNOWN PARTY**, on **COUNT 3** against Defendants **ZEIGLER**, **HASEMEYER**, **CARTWRIGHT, PELKER**, and **RICHARD**, and on **COUNT 4** against **UNKNOWN PARTY**.

**COUNTS 5**, **6**, **7**, and **8** are **DISMISSED** without prejudice. Defendant **UNKNOWN PARTY** is **DISMISSED** from this action without prejudice as concerns **COUNTS 5** and **8**.

As for **COUNTS 1-4**, the Clerk of Court shall prepare for Defendants **SHURTZ**, **PELKER**, **ZEIGLER**, **HASEMEYER**, **CARTWRIGHT**, and **RICHARD**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on Defendant **UNKNOWN PARTY** until such time as Plaintiff has identified these defendants by name in a properly filed amended complaint, which includes identifying these defendants in the caption and inserting the individuals' names, where applicable, throughout the complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if

not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, including expedited discovery aimed at identifying Defendant **UNKNOWN PARTY**.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral*.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give

security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 16, 2015**

*s/J. Phil Gilbert*
**J. PHIL GILBERT**
**United States District Judge**